# 25-383-CV

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT



DERWIN SALTERS,

*Plaintiff-Appellant,*

*v.*

NEW YORK CITY TRANSIT AUTHORITY, JEAN L. ANDRE,

*Defendants-Appellees,*

METROPOLITAN TRANSIT AUTHORITY,

*Defendant.*

———————————

*On Appeal from the United States District Court
for the Eastern District of New York*

## BRIEF FOR PLAINTIFF-APPELLANT
## WITH SPECIAL APPENDIX

Caner Demirayak
LAW OFFICE OF
   CANER DEMIRAYAK, ESQ., PC
*Attorneys for Plaintiff-Appellant*
1500 Astor Avenue, 2nd Floor
Bronx, New York 10469
718-344-6048


(212) 719-0990
appeals@phpny.com

## TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ......................................................... 1

ISSUES PRESENTED FOR REVIEW .................................................. 1

STATEMENT OF THE CASE .................................................................. 2

STATEMENT OF FACTS ....................................................................... 4

    **A. Defendants Exercised All Three of Their Peremptory Challenges Against Black Jurors Who Were Clear They Would be Fair and Impartial Jurors Showing an Intentional Discriminatory Strategy of Excluding Black Jurors** ............................................................................. 4

    **B. The Magistrate Judge Handling Jury Selection Failed to Conduct a Proper *Batson* Analysis** ............................................. 6

    **C. The District Judge Intervened and Obstructed Plaintiff's Counsel One Hundred and Fifteen (115) Times During the Testimony of a Single Witness in a Single Day: the Plaintiff, Derwin Salters** ....................................................................... 9

      i. The Trial Judge Intervened and Stopped Plaintiff's Opening Statement for More Than Five Minutes Inappropriately and Did not Intervene During Defendants' Opening Statement ................ 10

ii. The Trial Judge Intervened and Obstructed Derwin Salters During His Testimony 115 Times and the Trial Judge Made Numerous Biased Comments to Plaintiff and His Counsel in Front of the Jury ........................................................................... 11

**D. The District Judge Assisted the Defendant During His Testimony at Least Thirty-Four (34) Times** ............................. 30

**E. The District Judge Assisted Another Defense Witness During His Testimony at Least Six (6) Times** .......................... 37

**SUMMARY OF THE ARGUMENT** ...................................................... 40

**STANDARD OF REVIEW** ..................................................................... 41

**I. THE JUDGMENT MUST BE VACATED AND A NEW TRIAL ORDERED BECAUSE THE TRIAL COURT COMMITTED CLEAR ERROR IN DENYING PLAINTIFF-APPELLANT'S *BATSON* CHALLENGE BASED UPON A PATTERN OF EXCLUDING THREE BLACK JURORS WITHOUT EXPLICIT ADJUDICATION OF THE CREDIBILITY OF THE DEFENDANTS-APPELLEES' ALLEGED RACE-NEUTRAL EXPLANATIONS AND SUCH EXPLANATIONS WERE NOT CREDIBLE** .................................................................... 42

II.   THE JUDGMENT MUST BE VACATED AND A NEW TRIAL
      ORDERED      BECAUSE      THE      TRIAL      COURT'S
      SIGNIFICANTLY ADVERSE AND PREJUDICIAL CONDUCT
      TOWARDS   THE   PLAINTIFF   DURING   HIS   DIRECT
      TESTIMONY   AND   TO   PLAINTIFF'S   COUNSEL
      THROUGHOUT   TRIAL   AND   IN   FAVOR   OF   THE
      DEFENDANTS'   WITNESSES   AND   DEFENSE   COUNSEL
      IMPAIRED   THE   PROPER   FUNCTIONING   OF   THE   JURY
      AND MADE IT APPEAR TO THE JURY THAT THE TRIAL
      JUDGE WAS NEITHER NEUTRAL NOR IMPARTIAL AND
      DENIED PLAINTIFF A FAIR TRIAL ...................................... 46

CONCLUSION ........................................................................ 49

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Barnes v. Anderson,*
  202 F.3d 150 (2d Cir. 1999) ........................................................ 42, 43, 44

*Chan Young Bak v. Metro-North R.R. Co.,*
  650 Fed. App. 63 (2d Cir. 2016) ............................................................ 42

*Edmonson v. Leesville Concrete Co.,*
  500 U.S. 614 (U.S. 1991) ..................................................................... 42

*Shabazz v. Howard,*
  2024 U.S. App. LEXIS 14250
  2024 WL 2952351 (2d Cir. Jun. 12, 2024) ........................................... 41

*United States v. Alvarado,*
  923 F.2d 253 (2d Cir. 1991) .................................................................. 43

*United States v. Bejasa,*
  904 F.2d 137 (2d Cir. 1990) .................................................................. 46

*United States v. Mazzilli,*
  848 F.2d 384 (2d Cir. 1988) .................................................................. 47

*United States v. Victoria,*
  837 F.2d 50 (2d Cir. 1988) ............................................................. 46, 47

**Statutes**

28 U.S.C. § 1291 ................................................................................... 1

28 U.S.C. § 1332(a)(1) .......................................................................... 1

**Constitutional Provisions**

U.S. Const. amend. VII ............................................................46

## JURISDICTIONAL STATEMENT

This is a civil appeal from a February 18, 2025 dismissal of plaintiff's Complaint by the Eastern District of New York (Merchant, J.) following a jury's verdict. A-536-541. Judgment was entered dismissing this case on February 18, 2025. A-542. The district court had diversity subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) as there was complete diversity of citizenship between the parties and the amount in controversy exceeded $75,000.01 exclusive of interest. The Plaintiff timely filed a Notice of Appeal on February 18, 2025. A-543. As such, this Court has jurisdiction over Plaintiff-Appellant's appeal pursuant to 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

1.      Whether the trial court's denial of plaintiff-appellant's *Batson* challenge based upon a pattern of excluding three black jurors without explicit adjudication of the credibility of the defendants-appellees' alleged race-neutral explanations that one juror was out of it, another was uneducated and another may be sympathetic to the plaintiff, requires this matter to be remanded to the district court for a new trial?

1

2.     Whether the trial court's significantly adverse and prejudicial conduct towards the plaintiff during his direct testimony and to plaintiff's counsel throughout trial and in favor of the defendants' witnesses and defense counsel impaired the proper functioning of the jury and made it appear to the jury that the trial judge was neither neutral nor impartial thereby denying plaintiff a fair trial?

## STATEMENT OF THE CASE

On August 27, 2021 a civil Complaint was filed in the Eastern District of New York via 28.U.S.C. § 1332(a)(1) for claims of common law negligence causing serious personal injuries in an automobile crash. A-22-41.

As set forth in the Complaint, Derwin Salters sustained serious and permanent personal injuries as a result of the defendants-appellees' negligence in the ownership and operation of an articulated city bus. A-22-41. As demonstrated by the trial evidence the defendants failed to use reasonable care in the maintenance and repair of the articulated city bus's left side bumper, causing it to protrude out and hooking onto and dragging plaintiff's stopped vehicle, causing severe injuries. A-485-500. The trial evidence also demonstrated along with the defendant's own

2

admissions that the bus driver failed to use reasonable care in keeping a proper lookout, to avoid an accident and in violating numerous provisions of the New York State Vehicle and Traffic Law and the New York City Traffic Regulations. *Id.* As a result, plaintiff sustained numerous herniations of the spinal discs in his cervical spine causing compression on his spinal cord. A-42-50. Plaintiff received anterior cervical decompression and fusion surgery to his cervical spine and was rendered permanently disabled and unable to work. *Id.*

After a six-day jury trial the jury returned a verdict of no negligence against the defendants. A-536-541. The court entered judgment on the defense verdict and dismissed the complaint with prejudice. A-542. The court declined to entertain a motion[1] for a new trial. A-532-535. Prior to the verdict the court denied plaintiff's *Batson* challenge raised after the defendants excluded three black jurors via peremptory challenges in an openly racially discriminatory strategy. A-64-68. The court also denied two motions for a mistrial raised by the plaintiff on the basis of the denial

---

[1] Subsequently the plaintiff-appellant filed a motion for a new trial below which was denied on May 27, 2025. That part of the motion seeking to set aside the verdict as against the weight of the evidence is not automatically appealable. Plaintiff is considering whether an appeal of the court's determination of the remaining portions of such motion is permissible and warranted.

of a fair trial caused by the trial judge's repeated prejudicial obstruction[2] of plaintiff's direct testimony and open hostility to plaintiff's counsel in front of the jury. A-203, 353-364.

On February 18, 2025, the Clerk of the Court issued Judgment dismissing the case. A-542. Plaintiff-Appellant then timely filed a Notice of Appeal on February 18, 2025. A-543.

## STATEMENT OF FACTS

### A. Defendants Exercised All Three of Their Peremptory Challenges Against Black Jurors Who Were Clear They Would be Fair and Impartial Jurors Showing an Intentional Discriminatory Strategy of Excluding Black Jurors

On February 10, 2025 jury selection commenced. A-51-52. There was just one black male potential juror in the pool along with a handful of black female potential jurors. The defendants used their peremptory challenges against potential jurors 8, 16, and 17. A-63-64.

Potential juror number 8 Gladys Sanon is black. She stated clearly that she would be a fair and impartial juror. A-62. Ms. Sanon was

---

[2] Plaintiff omits the majority of the testimony by the expert witnesses on the issue of damages as the trial judge's unfair handling of the plaintiff as a witness alone warrants a new trial. Additionally, the cost of including the entire trial transcript is cost prohibitive to plaintiff's counsel, who already incurred more than $52,000 in expenses for litigating this matter.

previously selected for jury service in a criminal case. *Id*. In her prior criminal jury service, she reached a unanimous verdict with her co-jurors. *Id*. She is a trained medical assistant. *Id*. Ms. Sanon's significant other is a security officer and she had two adult children. *Id*. Ms. Sanon was clear she had no issues in serving as a juror in this case. *Id*.

Potential juror number 16 Ingrid Griffith is black. She stated she did not have any concerns of her ability to serve as a fair and impartial juror based upon the questions asked by the Magistrate Judge. A-56. Ms. Griffith is a home attendant with a high school diploma. A-60. She is unmarried and lives with her son, a security officer. *Id*. Ms. Griffith was clear she would follow the evidence and have no difficulty serving as a juror. *Id*.

Potential juror number 17 Lamont Bryan Is black. He was the sole potential black male juror. He stated he did not have any concerns of his ability to be a fair and impartial jurors based upon the questions asked by the Magistrate Judge. A-57. Mr. Bryan lives off investments in the stock market and is otherwise unemployed. A-61. He went to college for graphic design. *Id*. His interests include Ted Talks and psychology. *Id*. Mr. Bryan was clear he would be a fair and impartial juror. *Id*.

5

## B. The Magistrate Judge Handling Jury Selection Failed to Conduct a Proper *Batson* Analysis

In light of the lack of any legitimate non-discriminatory basis to use peremptory challenges against potential jurors 8, 16 and 17, all of whom are black persons, plaintiff-appellant raised a *Batson* challenge. A-64-65. The Magistrate Judge immediately focused on the race of "everyone else on the jury." A-65. At this point it was clear the Magistrate Judge was not leaning towards accepting the *Batson* challenge, even before a full analysis. A-66.

Defense counsel immediately provided a bogus pretextual reason for using a peremptory challenge against potential juror 8 Ms. Sanon stating she "seemed to be very simply educated, not knowing if she would fully be able to comprehend all the expert testimony." A-66. Such reason strains credulity as Ms. Sanon is a trained medical assistant! A-62. The inconceivability of such reason demonstrates discrimination, but the Magistrate Judge incorrectly assessed *Batson*. Moreover, Ms. Sanon previously served on a criminal jury and reached a unanimous verdict. A-62. It is nonsense to believe she would not be able to comprehend all the expert testimony.

6

Defense counsel continued to provide a bogus pretextual reason for using a peremptory challenge against potential juror 16 Ms. Griffith stating she may have "sympathy towards dealing with individuals who may be disabled, elderly, things of that nature." A-66-67. There was no basis to believe Ms. Griffith would not follow the judge's instructions to exclude sympathy from her responses or demeanor. She was unequivocal that she would be a fair and impartial juror and follow the evidence. The defendants' decision to exclude a second black juror with no basis heightened the proof that this was a discriminatory strategy to exclude black jurors.

Defense counsel went further to provide a bogus pretextual reason for using a peremptory challenge against potential juror 17 Mr. Bryan stating he "just seemed a little out of it [and] he didn't seem like he would fully comprehend the evidence." A-67. This reason was preposterous as Mr. Bryan stated he earned income from making investments in the stock market and was interested in Ted Talks and psychology. Such a person is hardly one who could not comprehend the evidence. Knowing there was no basis for these claims, the defense also falsely stated Mr. Bryan seemed a little out of it. He was not out of it and even if he was such claim

7

is not a reason to exclude a juror. The defendants' decision to exclude a third black juror with no basis cemented the proof that this was in fact a discriminatory strategy to exclude black jurors.

The Magistrate Judge did not assess the credibility of the defendants' purported non-discriminatory reasons for excluding three black jurors. Instead, the Magistrate Judge felt that having 2 black jurors was enough. A-68. The Magistrate Judge simply stated " I don't think he struck him because he's black." *Id*. The Magistrate Judge ended the analysis at the second step of *Batson*, stating "He did articulate race neutral reasons." *Id*.

Had the Magistrate Judge assessed the credibility of the proffered race neutral reasons, she would have had to sustain the *Batson* challenge. As to Ms. Sanon, the claim she would not understand medical evidence is not credible in the face of her training as a medical assistant. As to Ms. Griffith the claim she would be sympathetic to the disabled is not credible as there was no basis for such claim. As to Mr. Bryan the claim he would not comprehend the evidence is not credible as he invests in the stock market, watches Ted Talks and is interested in psychology.

8

The discriminatory effect of excluding three black jurors, including the sole black male potential juror was astounding as plaintiff is a black male from North Carolina. The plaintiff could not receive a fair shake with an 8 person jury with only 2 black jurors. Had the impermissibly stricken jurors been sat the jury would have been composed of 5 black jurors and been fair to both sides as the defendant bus driver is also a black male. The fact the defense excluded three black potential jurors while their bus driver was also a black male tends to show the lack of credibility in the reasons for using such peremptory challenges.

### C. The District Judge Intervened and Obstructed Plaintiff's Counsel One Hundred and Fifteen (115) Times During the Testimony of a Single Witness in a Single Day: the Plaintiff, Derwin Salters

On the first day of trial the district judge intervened and obstructed plaintiff and his counsel during his testimony one hundred and fifteen (115) times. A-76-253. This prejudicial conduct in front of the jury made it impossible for plaintiff's credibility to be properly assessed by the jury. The effect of such conduct was to paint plaintiff's counsel as a sketchy attorney who could not be trusted and to paint the plaintiff as not worthy of belief. In 11 years of practicing as an attorney, plaintiff's counsel never experienced such prejudicial conduct by a trial judge. The trial judge was

9

not a fair umpire but chose sides in this case and signaled to the jury by such behavior, who should prevail. Such unacceptable behavior by a federal district court judge cannot go unaddressed by this Circuit.

    i.    <u>The Trial Judge Intervened and Stopped Plaintiff's Opening Statement for More Than Five Minutes Inappropriately and Did not Intervene During Defendants' Opening Statement</u>

During opening statements the trial judge intervened when plaintiff's counsel commented on the defendant bus driver's absence in the courtroom. A-75-76. The trial judge went further and stopped plaintiff's counsel's opening statement and threatened to call a mistrial because of the fair comment made of the defendant bus driver's absence. A-76-78. The decision to take a more than five minute break during opening statements was extremely prejudicial to plaintiff's case.

The trial judge then intervened during opening statements when plaintiff's counsel touched his wheelchair when describing that plaintiff could have been rendered paralyzed during the spinal surgery. A-80.

The trial judge did not intervene during the defense opening statement. A-88-97.

10

ii.   The Trial Judge Intervened and Obstructed Derwin Salters
      During His Testimony 115 Times and the Trial Judge Made
      Numerous Biased Comments to Plaintiff and His Counsel in
      Front of the Jury

In the first three minutes of plaintiff Derwin Salters' testimony the trial judge intervened and would continue to intervene another 114 times before Mr. Salters was done testifying. A-103. The trial judge should not have permitted a sidebar so soon into Mr. Salters' testimony with no basis.

In the first eight minutes of plaintiff's testimony the trial judge did not permit plaintiff to provide background testimony into his volunteering work at his children's schools as follows. A-106-107.

"Q:   Have you volunteered at your children's schools?

A:    Yes
Q:    Tell me about that.

Q:    You can answer the question, sir.

A:    Yes. Because –

THE COURT:    That's the answer. Have you volunteered. He said
              yes.

Q:    Ever receive a certificate of appreciation for volunteering at
      the elementary school in North Carolina?
      Objection.

THE COURT:    Sustained."

Although no objection to an x-ray image of plaintiff's spine post-surgery was made in the Joint Pre-Trial Order, the trial judge prevented the plaintiff from introducing Exhibit 43. A-108-111. This behavior was clear sandbagging as the trial court led plaintiff's counsel to believe all exhibits listed on the JPTO without objection by the defense would be admitted. *Id.*

Early on during Mr. Salters' testimony the trial judge struck a portion of his answer and "ask[ed] that the witness just answer the question." A-112.

Moments later the trial judge struck plaintiff's counsel's question and answer as to the subject motor vehicle crash without an objection by the defense. A-113. The trial judge then made a disrespectful comment in response to a question about the crash stating "Have we? Sustained. We haven't actually." *Id.*

Again moments later the trial judge intervened while Mr. Salters was describing his job duties and stated "I'm not sure where the rest of your response is going. Do you want to ask another question." A-114.

The trial judge would continue in front of the jury by stating "Maybe work on the questions and the framing of your questions." A-114-115.

The trial judge seemed to take issue with plaintiff's counsel's use of the word crash and ordered a brief break to address her unreasonable feeling being "disrespected in front of a jury." A-117. The trial judge continued to state that she "know[s] how sharp [plaintiff's counsel is]. A-118. The trial judge would then state "I don't want this we're getting cute with it." *Id*. The trial judge then made clear that she felt she was insulted when plaintiff's counsel advised Mr. Salters was "doing the best he can with a ninth grade education," during his testimony. *Id*. In a desperate attempt to not have the trial judge ruin plaintiff's case, counsel apologized. A-119. But the trial judge would not relent.

When plaintiff sought to introduce the rental vehicle agreement, Exhibit 1, the trial court entertained defendants' request for a sidebar with no objection. A-124-127. The court made no ruling and the defense did not object to the exhibit. A-129.

The trial judge sustained an objection to a proper question used to help the witness orient his testimony and stated "Please don't recharacterize." A-130.

The trial judge sustained an objection to a background question asking how and why plaintiff traveled from North Carolina to New York with no basis. A-131.

The trial judge sustained two objections to basic and proper questions including "How many lanes were there on Nostrand Avene?" and "At some point did you have to drive towards Kings Highway?" A-134.

The trial judge even improperly intervened when plaintiff was attempting to testify about the date of the incident as follows:

"Q:   And on February 3, 2021 were you involved in a crash? Objection

THE COURT:    Sustained.

      I'll rephrase.

Q:    What happened on February 3rd, 2021?

A:    I was in an accident with a bus crash.

Q:    Where did the crash happen?

A:    On Nostrand.

      Objection.

THE COURT:    Sustained." A-135.

14

Due to the repeated prejudicial obstruction, plaintiff's counsel demanded a sidebar. *Id*. During the sidebar the trial judge expressed her continued feelings of bias against plaintiff's counsel. A-137.

During the sidebar plaintiff's counsel reminded the trial judge that she expressed her strong opinions about the case before trial stating "Just from the beginning your Honor is telling me to check myself on the video." A-138. The trial judge claimed this was a mischaracterization. *Id*.

In response to the simple question of "And can you describe the accident," the plaintiff provided an answer and after the answer the defense objected. Despite giving a proper answer to such an open ended question the court sustained the objection and stated "If you can just explain in response to the question how the accident occurred." A-141-142.

Thereafter counsel asked a question to form the next part of testimony and the trial court sustained and stated "You don't need to characterize what he just described. Just ask him a question, please." A-142. While plaintiff was in the middle of asking the next question about how his vehicle was shaken the trial judge intervened and asked that the question be rephrased. A-143.

15

After plaintiff testified the bus has a blind spot with no objection or striking, plaintiff's counsel began a question as follows:

Q:     And when you say there's a blind spot from the bus –

       Objection. Mischaracterizing the testimony again.

THE COURT:     Sustained. A-144.

Although plaintiff testified about the intersection in front of the accident location, the trial judge sustained an objection to a question about the plaintiff's intention upon reaching the intersection. A-144.

The trial judge sustained an objection to a question about why the bus was stopped at the location it was stopped at. A-145.

The trial judge then sustained an objection to a question about what speed the bus was going. A-145.

The trial judge sustained an objection to the question "And you said it was a very long bus?" A-146.

In response to the question "Now, can you describe for the jury what happened to your car when that bus bumper hooked on to you," the witness provided a long and detailed answer. Defense counsel then objected and the trial judge struck and instructed "the jury to disregard that portion that was not responsive to what happened to his car." A-147.

16

In response to the question about a photograph showing the accident scene and the subject bus asking "And is this where the bus was," defense counsel objected and the trial judge sustained. A-154.

The trial judge interrupted the plaintiff and struck his testimony while he was providing an answer to the question "How was your body feeling at that point? A-161.

The trial judge again interrupted the plaintiff while he was answering "how else were you feeling in your body at that point," and instructed him to stop and demanded the question be rephrased. A-161-162.

While plaintiff was providing an answer to the question "What happened at work," the trial judge intervened and stated "the question was, what happened at work." A-163. Plaintiff's counsel then asked "And after work, where did you go to?" *Id*. He answered "Home to take care of every body else," but the court sustained an objection to the question. *Id*.

While plaintiff was being shown a photograph taken of his rental vehicle during the damage estimate after the crash the trial judge ruined plaintiff's evidence by impermissibly intervening and confusing the

witness and then stated to the jury "He says the top one does not depict what his vehicle looked like after the accident." A-167.

Since this most recent intervention by the trial judge was so damaging to plaintiff's case and in light of the follow up baseless objection by defense counsel to the question "After the crash, was your vehicle --," before the question was finished, counsel demanded a sidebar and asked why there was a prohibition on using the word "crash." A-168-169.

The trial court sustained a speaking objection by the defense in which it was stated "Have we established that he was there during the damage estimate," made as the defense was clearly emboldened by the trial judge's bias against plaintiff. A-171.

When plaintiff's counsel tried to get around the obstruction the trial judge intervened again and sustained without an objection the question "So we established that this is your vehicle, sir, from the incident. Why don't you take a look at –" A-172.

When asked what caused the holes in his rental vehicle's bumper the trial judge sustained the speaking objection of "I don't believe this witness is qualified." A-173.

The trial judge again sustained a speaking objection when plaintiff was asked about the damage marks on the photographs where defense counsel stated "We haven't established what those marks are." A-174. The trial judge continued to sustain an objection to a basic question of "Do you know how much damage was sustained to the rental vehicle." *Id.*

The trial judge sustained without objection "Do you know who paid for it," being the damage to the rental vehicle. A-175. However, the defendants admitted to paying for the damage in their pre-trial memoranda of law and plaintiff certainly did not pay it.

When plaintiff provided an answer to "Now, did you have any interaction with the supervisor at the scene," the trial judge intervened and stated "And that's – if you can just yes – your question was, did you have conversation, the answer is yes. Your next question is?" A-179.

When plaintiff's counsel showed plaintiff the bus video in front of the jury the court permitted defense counsel to make a wild speaking objection, did not correct it and sustained the objection as follows:

"Q:    Now stopping the video at 13:47:38. Take a look at camera five. Do you see your vehicle on camera five? On the bottom right corner, do you see your vehicle?

A:    I cant see the vehicle yet. Cant see my car yet.

19

Q:  I'll withdraw and rephrase the question.

> Plaintiff's counsel is testifying for the witness. He asked him what he saw and he's further elaborating, describing the video.

THE COURT:  I sustained it. Ask the witness what he sees and describe it.

> For the record, I'm not testifying, Your Honor. I object to that characterization." A-183.

The court then took a break with the jury to marinate over the claim that plaintiff's counsel was "testifying for him" and "elaborating" on the video. During that break the trial judge threatened plaintiff's counsel over communicating with the plaintiff during the break with no basis. A-184-185.

On the return from the break the trial judge permitted long winded speaking objections by the defense and claimed to the jury that plaintiff's counsel was "obstructing the view," of the video. A-187. The trial judge also sustained an objection to a question asking the witness to narrate what was being shown on the video as it played." A-186-187.

The trial judge continued to claim plaintiff's counsel was obstructing the view of the video. A-188.

The defense now seriously emboldened by the trial judge's bias made an invalid speaking objection of "Inconsistent answers, or one answer was that it showed the dragging; the next answer is that it doesn't show the dragging." A-188. While the trial judge overruled the objection, she would not caution the defense on speaking objections. Yet, while plaintiff's counsel objected later the trial judge would caution him over speaking objections!

The trial judge continued to intervene for no reason and direct the plaintiff to "Be careful to answer the question that he's asking and he'll ask a follow up, if he needs to." A-190.

The trial judge sustained an objection to the question "Were you able to make a claim with Enterprise?" A-192-193.

During a sidebar the trial judge exposed her disdain for plaintiff and his counsel and bias by stating "You can't say his understanding is simple and then you then translate to something that's more sophisticated," as a follow up to the conflict in the beginning of the trial about the plaintiff having a ninth grade education. A-196.

21

Right after the break the trial judge told the plaintiff to "instead of repeating, if you're careful not to repeat back his question and just give your answer, if you don't mind. Thank you." A-197.

The trial judge sustained an objection by defense counsel after plaintiff provided an answer to who he had difficulty in obtaining treatment in North Carolina. A-197-198.

When discussing plaintiff's lack of insurance the trial judge ordered a sidebar. A-198.

During this sidebar plaintiff's counsel stated "These are very valid questions. These are basic questions and I'm being obstructed at every single moment. And, quite frankly, I'm being made to look like a fool in front of the jury, and so is my client. This is unacceptable." A-199. Plaintiff's counsel continued stating to the trial judge "With the way that this is handled, I'm being made to look like an incompetent attorney by the jury and it's unacceptable." A-202.

Plaintiff's counsel then stated "This is an unfair trial right now. It's a completely unfair trial...Right now my client is being denied due process because of the obstruction by defense counsel and, respectfully,

from Your Honor. I think it's completely unfair at this point, and there are concerns that we have with the handling of this trial." A-203.

In response the trial judge again expressed her bias against plaintiff by stating "The concerns I have right now is with your handling of the trial, actually." A-203.

The trial judge then sustained an objection to the question "Was it related to the insurance issue?" A-209.

During a brief conference without the jury present the trial judge referred to plaintiff's counsel's wheelchair as a "demonstrative" exhibit during opening statements! A-235.

Mere moments into the cross-examination of plaintiff the trial judge interrupted and directed the plaintiff to slow down. A-237.

The trial judge again intervened stating "When he asks the question, if you can just respond to the question, and then if there's something more that your attorney wants to follow up with, he'll be able to follow up. But you should only be answering the questions that he's asked." A-244.

The trial judge helped the defense and overruled plaintiff's counsel's objection to a compound question stating "Because that's what he just stated. Did he mean to do so compound [sic]." A-246.

The trial judge again helped the defense and showed bias by stating to plaintiff's counsel "No speaking objections." A-248.

The trial judge then interrupted the plaintiff mid sentence and stated "if your attorney has any follow up, he can ask you follow up. There's not currently a question pending." A-250.

The defense asked an improper and compound question of "Is the first indication of the accident when you felt the bus life you up and hit you; yes or no?" A-258. The plaintiff realized the compound nature and responded "The answer is too many answers…I need more clarification." *Id*. The trial judge did not clarify and made sure the witness did not answer in a favorable way and stated "So is what he saying correct or not correct?" *Id*.

The trial judge improperly intervened after plaintiff answered "No," to the question "But you didn't actually see the impact occur, correct? A-262. The trial judge would continue as follows:

"THE COURT:    To be clear, your question was: But you

24

didn't actually see the impact occur, correct? Are you saying, no, he's not correct? Or yes, he is correct? Because I just want to make sure the record is clear there. Is that correct that you didn't actually see the impact occur?

THE WITNESS:      No I didn't see the impact. I'm sitting in my car.

THE COURT:      Is that yes, he's correct, you didn't see the impact occur?

THE WITNESS:      I Can't see the impact.

THE COURT:      That's a yes or no?

THE WITNESS:      No, I didn't see it, no. I felt it.

THE COURT:      Okay." A-262.

This exchange was extremely damaging to plaintiff's case and completely unnecessary by the trial judge.

The trial judge intervened while the plaintiff was answering stating "So you concluded your answer." A-263.

The trial judge struck the plaintiff's answer and told the jurors to disregard "No, he spoke to me and apologized." A-264. Again, extremely damaging plaintiff's case and striking proof that the defendant apologized to the plaintiff for causing the crash!

25

During a sidebar plaintiff's counsel asked for a curative instruction "Because [defense counsel] just told the jury that my client was saying something false based upon his deposition, not his current trial testimony. It was an incorrect characterization." A-270. The trial judge refused to provide a curative and merely stated she would sustain the objection and allow the question to be withdrawn!

The trial judge then ridiculed the plaintiff stating "I'm not sure the court reporter was able to make that out. It wasn't so clear for me." A-274.

The trial judge then overruled plaintiff's objection to a question asked for the third time. A-283.

The trial judge stated to the jury without an objection "I'm going to strike that and ask that you wait for there to be a question before you speak. Okay? A-287.

When plaintiff answered "I can't say yes or no on this question, I got to elaborate," the court responded "Let's first answer the question." A-291.

The trial judge then overruled plaintiff's objection to the question of "Would it surprise you to learn that there's no documentation that you ever went to the emergency room?" A-299.

The trial judge again overruled plaintiff's objection that a question mischaracterized the evidence. A-301.

The trial judge yet again told the witness "I'm just going to ask you to answer the question to the extent that there's a yes-or-no answer, and then if you want to then supplement, your attorney will have an opportunity to ask you a supplemental question." A-312.

In the same moment the trial judge again overruled plaintiff's counsel's objection to "Would you agree that you weren't entirely truthful with hospital staff? A-312.

During redirect the trial judge sustained an objection to the question "What happened to your bumper at the time of impact?" A-324.

The trial judge sustained an objection and asked the jurors to disregard the question "Was there any contact between your vehicle and the bus before it reached that dangerously hanging hook? A-324-325.

During redirect the plaintiff answered a question that "The video shows that it's my fault all the way through man." A-325. The court would

then sustain an objection to the question "Say it again. *Id.* The court then sustained an objection to the follow up question "What does the video show at all times?" *Id.*

Plaintiff's counsel then stated "Can I ask another question, Judge?" The judge stated "A different question…The witness has answered that question." A-325. Clearly the trial judge was pleased with the answer that plaintiff gave then was not so favorable and would not allow plaintiff's counsel to attempt to clarify.

The trial judge then sustained an objection to the question "Would you have brought this lawsuit if you were 100 percent at fault? A-325-326.

The trial judge then sustained an objection to a question asking what the defendants' role in causing the accident was. A-331.

The trial judge sustained an objection to "Have you ever been trained to testify, sir? A-336.

The trial judge sustained an objection to "Are you able to comment at all on what these doctors are nurses wrote down in these reports? A-337.

The trial judge then intervened while plaintiff was answering about his systems and stated "I just want to make sure, Mr. Salters, that you're responsive to the question. The question is how did your symptoms change?" A-338.

When plaintiff's counsel asked the plaintiff to "describe for the jury what two photographs show as far as the accident is concerned," defense counsel objected stating "I don't think the witness is qualified to answer this question." A-342. In response plaintiff's counsel stated "He's answering as an observant and participant to the accident, as a lay witness." But the objection was sustained. *Id*.

During re-cross the trial judge overruled plaintiff counsel's objection to a question that asked what was possible. A-344.

During a sidebar the trial judge lambasted plaintiff's counsel for commenting anything is possible and complained about speaking objections. A-346. Plaintiff's counsel made clear that the trial judge did not permit him to ask plaintiff what caused the crash but that she was now allowing defense counsel to do so. *Id*.

At the end of plaintiff's testimony the trial judge cut him off and did not permit him to fully answer "What, if anything, else from your personal knowledge being in the crash caused the crash? A-348-349.

### D. The District Judge Assisted the Defendant During His Testimony at Least Thirty-Four (34) Times

Within the first few minutes of the defendant's testimony the trial judge treated him starkly different from the plaintiff. She interrupted him to remind him to "Just the answer to the question," hoping he would not provide poor testimony A-377.

Moments later the trial judge continued to favorably assist the defendant by stating "Sir, I want to be focused on the question." A-378.

When the defendant continued to provide testimony that helped plaintiff the trial judge cut him off and stated "I'm sorry I just –" as sort of a signal for him to answer properly and when he provided the "proper" response, the trial judge stated "Thank you." A-379.

A mere moments later the trial judge sustained an objection to a simple question of "What speed was your vehicle going at that time?" A-379.

30

The trial judge then again interrupted the defendant while he provided an answer and again assisted him to focus on the question and to provide a more helpful answer. A-380.

Two pages later the trial judge yet again jumped in to help the defendant and stated "I want to make sure you did this, I'm not sure. You said snow was?" A-382.

A few minutes later the trial judge jumped in to help the defendant and stated "I want to make sure you, just need to answer the question." A-385.

When the defendant was asked about an omission in his report the trial judge yet again intervened and stated "Just answer." A-386.

When the defendant was asked about the inconsistency between how he described the accident on his report and what the video showed, the trial judge would not permit him to answer as follows:

"Q:    When we watched the video, all of us yesterday, do you still [stand] by that statement that this was a rear end?

Objection to mischaracterization of the witness's testimony.

THE COURT:    Sustained.

Q:    I will ask a different question. Was there a rear-end collision?

31

A:     What is my definition of that?

Q:     I didn't ask for your definition. I asked if it's a rear end.

       Objection.

THE COURT:     Sustained.

A:     It is, I mean –

       Objection.

THE COURT: Sustained. I'm sorry. Sustained." A-389.

The trial judge continued to treat defendant starkly different when she interrupted his answer and stating "Sir, I'm going to ask – he's going to ask another question. You'll have an opportunity to be questioned by your attorney, by the attorney, but right now if you can just answer the question posed." A-391.

When the defendant began to provide another answer that was not favorable the trial judge again intervened and stated "Sir, the question is  -- I'll ask the reporter to read back the question." A-392-393.

When plaintiff's counsel persisted in trying to obtain a proper answer, the trial court would not allow an answer and instead stated "I think he did," answer it. A-393.

When the defendant provided a response that was inconsistent the trial judge interrupted "The question, sir, if the court reporter can read the question back again." A-393.

When the defendant was asked what speed the other vehicle was going the judge sustained the objection. A-398. When the defendant was asked whether the other vehicle was speeding the trial judge again sustained an objection. *Id.*

When the defendant again tried to provide a detailed answer that would tend to hurt him the trial judge intervened and stated "The answer was no. I'm going to strike the reminder of that answer." A-399.

When the defendant provided a damaging untruthful answer the trial court intervened and stated "You just have to answer at this point." A-400.

When the defendant continued to provide damaging untruthful answers the trial court stepped in and stated "Sir, so I think you've completed the answer as to why you say it's going too fast. He moved on to a new question." A-401.

The trial judge continued to sustain objections to a question showing the defendant's inconsistency in statements as follows:

33

"Q:    It's your testimony when you said it was a fast car going too fast, you're referring to a race car that can go fast?

Objection.

THE COURT:    Sustained.

A:    Sports car I said." A-401.

The trial judge continued to obstruct the plaintiff's counsel's ability to effectively question the defendant as follows:

Q:    "No matter how good a driver you were, no matter how straight you were, no matter what happened you couldn't do anything to avoid that accident because that bus bumper was sticking out.

Objection.

THE COURT;    Sustained.

A:    The bus bumper was not sticking out.

THE COURT:    Sir, sir, sir, there was a question and that's why it's important here that you allow him to finish the question and wait." A-405.

When the defendant clearly was about to provide an unfavorable statement the trial judge would not permit him and stated "No, sir. No, no. This is his time to ask questions. Now, there will be further questioning and another opportunity for you to explain further. Counsel, please continue." A-406.

34

When the defendant continued to testify inconsistently the trial judge stepped in and stated "That's the answer." A-407.

The trial judge continued to prohibit the plaintiff's counsel from asking about the speedy of the other car with no basis. A-408.

When the defendant was asked whether the other car went three feet to the right, the trial judge sustained an objection and stated "Asked and answered." A-418. In a follow up question to confirm the defendant did not know the distance, the trial court again sustained the objection. A-419.

When plaintiff's counsel asked two basic questions when referencing the video footage the court sustained baseless objections. A-420.

Again when the plaintiff's counsel asked a follow up question to how many seconds the collision took the trial court stepped in with no objection. A-421. In the moment feeling the extreme bias, plaintiff's counsel responded "Okay, no problem." *Id*.

The trial court continued to prevent answers to basic questions such as "Did any part of the rear of the bus, the actual back, get hit in this accident?" A-422.

When the defendant began to provide a bogus explanation as to why he claimed it was a rear end crash when it was not as shown on video, the trial judge jumped in and again stated "Sir, I'm sorry. I want to make sure your response is directly to the question." A-423.

The trial judge then sustained an objection to "Was there a side swipe accident or not?" A-424. On the follow up question the trial judge then cut off defendant when he tried to provide a detailed answer that would expose him to an inconsistency. A-424.

The trial judge then sustained an objection to a question attempting to confirm the inconsistency in defendant's testimony and went forward stating "You don't need to answer." A-427.

The trial judge continued to obstruct plaintiff's counsel from obtaining answers that would expose the defendant's inconsistency. A-428-429.

When the defendant tried to falsely explain the lack of inconsistency the trial judge against stepped in and stated "That's your answer." A-430.

The trial judge yet again continued to attempt to protect the defendant from inconsistencies on which direction his bus wheels were. A-432.

The trial judge made sure the defendant would not be exposed to inconsistencies and stated "That's all you need to say." A-433.

The trial judge then jumped in again to attempt to clear up inconsistencies with the video and defendant's testimony. A-437.

The trial judge assisted the defendant again and told him "Don't answer the question," to the following: "Should this jury be able to accept what you are saying as personal knowledge or do they have to refer to the video in the reports because you don't remember anything four years later?" A-438-439.

## E. The District Judge Assisted Another Defense Witness During His Testimony at Least Six (6) Times

The trial judge sustained a baseless objection that it was compound to the question: "[Did] you receive[] the call because there was no one else available to respond? A-441.

The trial judge continued to sustain an objection to whether a document the witness himself referenced was not produced in discovery before trial. A-444. When the witness tried to answer the next similar

question anyway the trial court stated "I'm sorry. You just answer the question. Thank you."

The trial judge continued to prevent the plaintiff's counsel from inquiring into why the normal protocol of assigning supervisors to accident scene was not followed on the date of the incident. A-458.

The trial judge did not permit the witness to testify how the bus bumper can become dislodged from attachment to another car. A-459.

The trial judge even did not permit an answer to the question of "What is the basis of your conclusion that the bumper became dislodged from attachment to the other car? A-459.

The trial court sustained objections about the cameras equipped on the bus as follows:

"Q:   With respect to the specific bus that you responded to on February 3, 2021, do you know how many cameras it actually has?

A:    No.

           Objection. Asked and answered.

THE COURT:    Sustained.

Q:    And if the bus had nine cameras, do you know if there were more?

           Objection.

38

THE COURT:     Sustained.

Asked and answered." A-474.

The trial court continued to obstruct the plaintiff in the following exchange:

"Q:     Sir, I have one more question for you. If a car is turning to the right from a stopped speed, does that cause a big enough impact to dislodge the bumper on a bus?

Objection.

Q:     From based on your training and experience as a –

THE COURT:     Sustained.

Q:     -- two decade long supervisor?

Objection.

THE COURT:     Sustained." A-476.

The trial court even prohibited plaintiff's counsel from showing the video of incident to the supervisor who investigated the crash! A-480-482. The trial court claimed the video cannot be shown to the witness because he did not witness the accident! A-482.

39

The trial court went further to disparage plaintiff's counsel after withdrawing the question by stating "I'll ask the jurors to disregard that statement. It was improperly made by the attorney." A-483.

## SUMMARY OF THE ARGUMENT

After telling plaintiff's counsel during an off the record settlement conference to "check himself" on his chances of prevailing at trial the trial judge in this case disrupted the plaintiff's attorney during his direct testimony of the plaintiff 115 times in a single day. This conduct denied plaintiff a fair trial and made it impossible for him to prevail on the merits in a simple motor vehicle negligence case. But this was not enough.

During jury selection, the defendant was permitted to discriminatorily exclude three black jurors while the magistrate judge (for jury selection only) glossed over the analysis of plaintiff's *Batson* challenge and accepted defendant's pretextual reasons for excluding the jurors without assessing the credibility of those clearly discriminatory reasons for excluding the three black jurors.

Each of the three black jurors should have been sat as jurors over the defendants' discriminatory exercises of peremptory strikes. Instead,

the jury became a jury not of plaintiff's peers but instead of 75% white or Asian jurors and a mere 25% black. Had the Magistrate Judge performed her obligation to assess the credibility of the defendants' proffered reasons, it would have been clear the challenges by defendants were unlawful in violation of *Batson*.

In a final nail in the coffin for plaintiff's inability to prevail, the trial judge assisted the defendant bus driver during his testimony 34 times. The trial of this case was unfair, denied plaintiff due process and also involved the racially discriminatory use of peremptory challenges against three black jurors for no reason other than because the defendants impermissibly perceived their black race as an impediment to their ability to prevail in this case. The judgment of the trial court must be vacated and this case remanded below for a new jury trial with instructions to the trial court to remain fair and to conduct a proper *Batson* inquiry if such challenge must be raised in the retrial.

## STANDARD OF REVIEW

The Second Circuit reviews a trial court's determination of a *Batson* challenge under a clear error standard. *See Shabazz v. Howard*, 2024 U.S. App. LEXIS 14250, * 6, 2024 WL 2952351 (2d Cir. Jun. 12, 2024).

41

The Second Circuit reviews whether a civil litigant was denied a fair trial under an abuse of discretion standard.

**I.     THE JUDGMENT MUST BE VACATED AND A NEW TRIAL ORDERED BECAUSE THE TRIAL COURT COMMITTED CLEAR ERROR IN DENYING PLAINTIFF-APPELLANT'S *BATSON* CHALLENGE BASED UPON A PATTERN OF EXCLUDING THREE BLACK JURORS WITHOUT EXPLICIT ADJUDICATION OF THE CREDIBILITY OF THE DEFENDANTS-APPELLEES' ALLEGED RACE-NEUTRAL EXPLANATIONS AND SUCH EXPLANATIONS WERE NOT CREDIBLE**

"*Batson*, extended to civil cases by *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 628 (U.S. 1991), forbids the use of peremptory challenges to exclude potential jurors on the basis of their race." *Chan Young Bak v. Metro-North R.R. Co.*, 650 Fed. App. 63 (2d Cir. 2016).

As explained in *Barnes v. Anderson*, 202 F.3d 150, 155 (2d Cir. 1999) "When a *Batson* challenge is raised, the trial court must decide (1) whether the movant has made a prima facie showing that the non-movant has exercised its peremptory strike on the basis of race, (2) if so, whether the non-movant has satisfied its burden of coming forward with a race-neutral explanation for striking the juror in question, and (3) if so, whether the movant has carried his burden of persuasion of proving purposeful discrimination.

Here, the Magistrate Judge found that the plaintiff made a prima facie case of the exercise of peremptory challenges on the basis of race, based in part on the pattern of excluding three black jurors in a row. The Magistrate Judge was then provided supposed race-neutral reasons from the defendants for such challenges, which were clearly pretextual. The Magistrate Judge then erroneously stated that there were still at least two black jurors selected and that that somehow rectified the defendants' violation of *Batson*.

Plaintiff's counsel adequately set forth why the reasons set forth by the defendants were a pre-text for purposeful discrimination. However, the Magistrate Judge simply held that she did not feel it was proven and did not go further. This error requires that the judgment be vacated and a new trial ordered as per *Barnes*.

As stated in *Barnes*, "The third-stage analysis...compels courts to determine the credibility of the proffered explanations," by defendants of their exercise of peremptory challenges. *Barnes*, 202 F.3d at 155 (*quoting United States v. Alvarado*, 923 F.2d 253, 256 (2d Cir. 1991)).

As such, "Where a court fails to make such a finding with respect to the proffered explanation for each challenged strike, "the appropriate

course usually will be to remand for findings by the court as to the challenged strikes and the ultimate determination on the issue of discriminatory intent based on all the facts and circumstances." *Id* at 155.

However, the Second Circuit has also made clear where a further hearing on remand "may not yield a satisfactory basis for determining the non-movant's state of mind when the jury was selected…the court shall order a new trial." *Id* at 155.

Accordingly, since the trial transcript demonstrates the court erred in its handling of the *Batson* challenge, a new trial must be ordered.

Here, the trial transcript makes crystal clear that the Magistrate Judge did not even make a finding with respect to the proffered explanations for the use of peremptory challenges against jurors 8 and 16, but only as against juror 17. And, the reason for excluding juror 17 also lacked credibility as he attended college for graphic design, invests in the stock market, likes Ted Talks and is interested in psychology. This is hardly a person who could not comprehend the evidence. The claim he was out of it is not a legitimate basis to strike him either.

 This is critical as the proffered explanation for such jurors lacked any credibility. Juror 8 is a trained medical assistant and previously

served on a criminal jury, reaching a unanimous verdict. The defendant's reason for excluding her is that she would not understand the expert medical evidence. Such reason is not credible based on juror 8's background.

Finally, the defendant provided no basis for claiming juror 16 would be sympathetic to the disabled or elderly merely because she works as a home attendant. The Magistrate Judge having failed to even assess the credibility of the reasons for jurors 8 and 16 seriously erred and its assessment for juror 17 was just plain wrong.

Plaintiff has demonstrated clear error requiring vacatur of the judgment and a new trial.

## II. THE JUDGMENT MUST BE VACATED AND A NEW TRIAL ORDERED BECAUSE THE TRIAL COURT'S SIGNIFICANTLY ADVERSE AND PREJUDICIAL CONDUCT TOWARDS THE PLAINTIFF DURING HIS DIRECT TESTIMONY AND TO PLAINTIFF'S COUNSEL THROUGHOUT TRIAL AND IN FAVOR OF THE DEFENDANTS' WITNESSES AND DEFENSE COUNSEL IMPAIRED THE PROPER FUNCTIONING OF THE JURY AND MADE IT APPEAR TO THE JURY THAT THE TRIAL JUDGE WAS NEITHER NEUTRAL NOR IMPARTIAL AND DENIED PLAINTIFF A FAIR TRIAL

When a party claims it was denied a fair trial[3] by the trial judge's conduct, "The vital question is not whether the trial judge's conduct left something to be desired but whether [her] behavior was so prejudicial that it denied…appellant a fair, as distinguished from a perfect, trial." *United States v. Bejasa*, 904 F.2d 137, 142 (2d Cir. 1990). "In making [such] determination [this Circuit] can only be guided by the cold black and white of the printed record." *Id.*

It is undisputed that "The court must exercise caution to maintain an appearance of impartiality," during a jury trial. *United States v. Victoria*, 837 F.2d 50, 54 (2d Cir. 1988). It is equally true that "The trial

---

[3] While the cases analyzing whether a party was denied a fair trial involve criminal trials, the same principles should apply to civil cases that reach levels of partiality as seen in this case. This Circuit can expand such principles when considering that the Seventh Amendment to the United States Constitution entitles persons to a jury trial. U.S. Const. amend. VII. As such, denying even a civil litigant a fair jury trial is also a constitutional violation.

46

court is entitled to interrogate witnesses in the discharge of its responsibility to insure that the issues are clearly presented to the jury." *Id* at 54. In *Victoria* the Second Circuit found that the questions asked by the trial judge were in the nature of cross-examination challenging the credibility of the witnesses.

This Circuit held that "It seems to be clear error for a trial judge to ask questions bearing on the credibility of a [witness] prior to the completion of direct examination." *Victoria*, 837 F.3d at 55. This Circuit specifically found that such conduct by a judge "Unfortunately…also served to convey to the jury here the judge's opinion that the witness was not worthy of belief." *Id*. As such, the Circuit held the criminal defendant there was denied a fair trial and remanded the case for a new trial.

As explained in *United States v. Mazzilli*, 848 F.2d 384, 388 (2d Cir. 1988), it is "[N]ot a proper function of the court [to seek to impeach a witness's testimony] for it must always maintain the appearance of impartiality and detachment." To that end the court "should not be so zealously pursued as to give the impression to the jury that the judge believes one version of the evidence and disbelieves or doubts another." *Id*. In *Mazzilli*, the Circuit found the "district court played an overly

47

intrusive role during [the witness's] testimony." *Id* at 389. That "The Court's questioning left the jury with the indelible impression that the court did not believe [the witness's] account of the facts." *Id*. As such, the Court reversed and ordered a new trial.

In the case at bar the trial judge's conduct during plaintiff's direct testimony and comments made to counsel in front of the jury made it appear to the jury that the trial judge was not impartial. The effect of such behavior conveyed a clear sign to the jury that the trial judge did not feel plaintiff was worthy of belief.

Plaintiff was not permitted to testify for 4 minutes without prejudicial intervention by the trial judge. And most interventions by the trial judge tended to impeach the credibility of not only the plaintiff witness but also his counsel.

Whenever the trial judge had an opportunity to assist the defendant's witnesses, she did so. The clear black and white printed transcript shows the stark contrast between how the trial judge treated the plaintiff and his counsel and the defendants and their counsel.

The trial judge below left the indelible impression to the jury that the court did not believe the plaintiff's case. There was no way for

plaintiff to overcome such belief even in the face of admissions of liability by the defendants' own witnesses. Plaintiff is entitled to a new and fair trial and not one presided over by a judge taking sides in front of the jury.

## <u>CONCLUSION</u>

For the reasons set forth above, the Judgment of the United States District Court for the Eastern District of New York dismissing this case based upon a jury's verdict should be vacated and the matter remanded for a new trial and attorney's fees and costs should be awarded to Plaintiff-Appellant.

Dated: June 2, 2025

/s/ Caner Demirayak
_____
Caner Demirayak, Esq.

49

## CERTIFICATE OF COMPLIANCE

In accordance with Federal Rules of Appellate Procedure Rules 32(a)(7)(B) and (C), the undersigned attorney certifies that the accompanying brief is printed in 14-point typeface, Century Schoolbook and, along with footnotes in 12-point typeface Century Schoolbook, contains no more than 13,000 words and does not exceed 50 pages in length. According to the data in Microsoft Word, this brief contains **9,102** words.

/s/ Caner Demirayak
_____
Caner Demirayak, Esq.

**SPECIAL APPENDIX**

## **Table of Contents**

**Page**

Judgment of the United States District Court, Eastern District
of New York, entered February 18, 2025 ...................................... SPA1

AO 450 (Rev. 11/11)  Judgment in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____Eastern_____  District of  ___New York___

| | |
|---|---|
| DERWIN SALTERS | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.    1:21-cv-04836 |
| NEW YORK CITY TRANSIT AUTHORITY; | ) |
| JEAN L. ANDRE | ) |
| *Defendant* | ) |

## JUDGMENT IN A CIVIL ACTION

The court has ordered that *(check one)*:

☐ the plaintiff *(name)* _____ recover from the defendant *(name)* _____ the amount of _____ dollars ($ _____ ), which includes prejudgment interest at the rate of _____ %, plus post judgment interest at the rate of _____ % per annum, along with costs.

☐ the plaintiff recover nothing, the action be dismissed on the merits, and the defendant *(name)* _____ recover costs from the plaintiff *(name)* _____ .

☒ other:   This action having been tried by a jury, a unanimous verdict having been rendered in favor of Defendants, IT IS ORDERED AND ADJUDGED that judgment is entered in favor of Defendants and against Plaintiff Derwin Salters. The complaint is dismissed with prejudice.                                                                                                          .

This action was *(check one)*:

☒ tried by a jury with Judge _____Orelia E. Merchant_____ presiding, and the jury has rendered a verdict.

☐ tried by Judge _____ without a jury and the above decision was reached.

☐ decided by Judge _____ on a motion for _____
_____ .

Date:   ____2/18/2025____          *CLERK OF COURT*

                                     */s/Tasheana Lubin*
                                     *Signature of Clerk or Deputy Clerk*